Jon A. Titus, #006501
David A. Fitzgerald, #020446
**TITUS BRUECKNER & LEVINE PLC**
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona 85255
(480) 483-9600
jtitus@tbl-law.com
dfitzgerald@tbl-law.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ROBERT M. JOHNSTON; JANICE M. JOHNSTON; and ROBERT F. AND JANICE M. JOHNSTON REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>CALTON & ASSOCIATES, INC.; a Florida corporation, DARYL CALTON; VIRGINIA CALTON, a/k/a GINNY CALTON; and DWAYNE CALTON,<br><br>Defendants. | Civil Action No.:<br><br>**PLAINTIFFS' MOTION TO MODIFY OR CORRECT ARBITRATION AWARD; OR, IN THE ALTERNATIVE, MOTION TO VACATE ARBITRATION AWARD**<br><br>**[ORAL ARGUMENT REQUESTED]** |

## INTRODUCTION

In the underlying FINRA arbitration, the arbitrators found negligence on the part of Defendant Daryl Calton. Despite the finding of negligence, the arbitrators failed to render an award in favor of Plaintiffs. Instead, they rendered an award in favor of Defendants on the basis that Defendant's negligence was not "egregious." However, in order to have prevailed on their negligence claim, Plaintiffs did not have to prove that

Defendant's negligence was egregious. Plaintiffs only had to prove negligence - which they did.

By rendering an award in favor of Defendants, the arbitrators manifestly disregarded the law applicable to the negligence claim and certain other claims asserted by Plaintiffs. The arbitrators also improperly awarded on the basis of a matter not submitted to them – i.e., on the basis of egregious negligence as opposed to negligence. Accordingly, the Court should modify or correct the Award; or, in the alternative, the Court should vacate the Award, in whole or in part.

Plaintiffs were forced to industry arbitration because of a boilerplate arbitration clause in their customer agreements. Plaintiffs would have preferred to have had their dispute heard by a court which would have understood and applied the law, not manifestly disregarded it.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND.

#### a. Parties, Jurisdiction And Venue.

Plaintiffs Robert and Janice Johnston ("Bob and Jan") are an elderly retired couple. [Award,[1] p. 1-2; ASoC,[2] 2:6-9; Ex. 3 (Arb. 2, 7 and 9)[3]]. Bob (80 years old) and Jan (76 years old) are residents and citizens of New Mexico. [*Id*.]. They are the trustees

---

[1] A true and correct copy of the arbitration award (the "Award") is attached at Ex. 1.

[2] A true and correct copy of the Amended Statement of Claim ("ASoC") filed in the Arbitration is attached at Ex. 2.

[3] Each of Ex. 3 – 13 attached hereto is a true and correct copy of, or a true and correct copy of an extract of, an exhibit that is in evidence in the Arbitration. References to "Arb." followed by one or more numbers refer to the applicable exhibit number or numbers used by Plaintiffs, as Claimants, in the Arbitration.

of the Robert F. and Janice M. Johnston Revocable Trust, a/k/a Robert & Janice Johnston Revocable Trust (the "Trust," and together with Bob and Jan, the "Johnstons"). [ASoC, 2:9-12; Ex. 3 (Arb. 2, 3, 7 and 9)].

Defendant Daryl Calton ("Daryl Calton") is a securities broker, dealer or salesman, holding a Series 24 license. [ASoC, 2:13-14; Ex. 4 (Arb. 48), 9:5-10:6]. Daryl Calton is married to Defendant Virginia Calton, a/k/a Ginny Calton ("Ginny Calton"). [Award, 2-3; ASoC, 2:23-3:3]. Daryl and Ginny Calton are residents and citizens of Arizona. [ASoC, 2:18-19; Ex. 4 (Arb. 48), 10:16-15:3].

Daryl Calton is employed by and is a registered representative of Defendant Calton & Associates, Inc. ("Calton & Associates"). [ASoC, 2:14-16; Ex. 4, (Arb. 48), 10:7-8, 13:25-14:4, 14:23-25]. Calton & Associates is a full service brokerage firm and investment advisor, having its headquarters in Florida and an office in the City of Mesa, County of Maricopa, Arizona. [ASoC, 2:17-18; Ex. 4 (Arb. 48), 14:4-8, 14:17-19]. Daryl Calton works out of the Mesa, Arizona office of Calton & Associates. [ASoC, 2:18-19; Exhibit 4 (Arb. 48), 15:1-3].

Defendant Dwayne Calton ("Dwayne Calton") is Daryl Calton's boss. [ASoC, 2:20-21; Ex. 4 (Arb. 48), 118:7-10]. Dwayne Calton is the founder and president of Calton & Associates. [ASoC, 2:20-21; Ex. 4 (Arb. 48), 14:11-22]. He is a resident and citizen of Florida. [Ex. 4 (Arb. 48), 118:7-10].

The Johnstons, as the Claimants, commenced the underlying FINRA arbitration proceeding (the "Arbitration") against each of Daryl Calton, Ginny Calton, Dwayne Calton and Calton & Associates (each a "Defendant," and collectively, the

"Defendants"), as the Respondents. [Award, p. 1-2; ASoC, 2:13-3:3]. The Arbitration was conducted in Maricopa County, Arizona. [Award, p. 1].

There is diversity of citizenship; the Court has jurisdiction over the parties and the subject matter; and venue is proper. *See*, *e.g.*, 28 U.S.C. §§1332(a)(1) and 1332(b)(2); 9 U.S.C. § 9; *see also* § I.a., *supra*.

**b. <u>Investments</u>.**

The Johnstons commenced the Arbitration in connection with each of the following investments (each an "Investment," and collectively, the "Investments"): DBSI, Odyssey III, Odyssey VII, Cawley I, Cawley II, Hennessey Financial Monthly Income Fund, LP ("Hennessey Fund"), and Capital Solutions Monthly Income Fund, LP ('Capital Solutions Fund"). [Award, p. 1-2; ASoC, 3:25-5:3].

The Johnstons invested $200,000 in DBSI "9.5% Corporate Notes," $100,000 in Odyssey III "Secured 9.0% Notes," $50,000 in Odyssey VII "Secured 9.0% Notes," 200,000 in Cawley I "Secured 9.0% Notes," and $200,000 in Cawley Fund II "Secured 10.0% Notes." [<u>Ex. 5 (Arb. 54-55, 59-60, 69, 75-76, 83 and 85)</u>]. In April of 2009, the Johnstons invested $259,896 in "Series I Preferred Notes" issued by Capital Solutions Fund. [<u>Ex. 5 (Arb. 32)</u>]. That Investment consisted of cash of $59,976 plus the conversion of the Johnstons' $199,920 capital balance in the limited partnership interests originally issued by Hennessey Fund. [<u>Ex. 5 (Arb. 16, 18 and 32)].</u>

All of the Investments were real estate related securities; all of them were complex; all of them were speculative; and all of them failed to perform. [ASoC, 3:25-11:10; <u>Ex. 4, (Arb. 48), 26:8-11, 78:23-79:2) Ex. 6 (Arb. 13, 24. 50, 57, 65, 72 and 81)</u>;

Ex. 7 (Arb. 97), CALTON 002994; Ex. 8 (Arb. 44, 61, 63 and 70); Ex. 9 (Arb. 77, 78 and 79); Ex. 10 (Arb. 45); Ex. 13 (Arb. 96); § I.b, *infra*]. Indeed, all of the issuers of the Investments are either bankrupt or otherwise defunct. [ASoC, 5:3-9; Ex. 8 (Arb. 44, 63 and 70); Ex.9 (Arb. 77), JOHNSTON 3662)].

The Investments, or at least some of them, were fraudulent. [ASoC, 3:25-11:10; § I.b, *infra*]. For example:

- Cawley I and Cawley II admitted that they did not use the proceeds of their offering in conformity with the offering memoranda. [Ex. 8 (Arb. 61)].
- DBSI was found to be the alter ego of its insiders. [Ex. 9 (Arb. 77)[4]].
    - One insider pled guilty to conspiracy to commit securities fraud in *U.S. v. Bringhurst*. 1:13-cr-00045-BLW (D.Idaho2013). [Ex. 9 (Arb. 78)].
    - Others of DBSI's insiders are subject to criminal indictment and facing charges of securities fraud and conspiracy to commit securities fraud in *U.S. v. Swenson, et al.*, 1:13-cr-00091-BLW (D.Idaho). [Ex. 9 (Arb. 79); *see also* Claimants' Response to Motion to Dismiss, 7:11-13 (and exhibit H thereto (Superseding Indictment, Document 21))[5]].
- Capital Solutions Fund was found by a jury to have violated, and was adjudged to have violated, Rule 10b-5, promulgated under the Exchange Act, and

[4] *See, e.g.*, JOHNSTON 3662, 3667, 3669 (¶¶9-10), 3670 (¶12), 3675 (¶27), 3677 (¶31, bullet pts. 2 and 4-5), 3680-3681 (¶35(b), bullet pt. 1), and 3741, at Ex. 9.

[5] The arbitrators read Claimants' Response to Motion to Dismiss and the exhibits thereto. [Award, p. 2-3]

§17(a) of the Securities Act in *SEC v. True North Finance Corp., et al. ("SEC v. True North"),* 10-cv-3995-DWF-JJK (D.Minn.2013). [Ex. 10 (Arb. 45)].

Prior to the entry of judgment against it, Capital Solutions Fund filed a motion for summary judgment. *See SEC v. True North*, 2012 U.S. Dist. LEXIS 161044 (D.Minn.2012).[6] The offering of the Series I Preferred Notes was a subject of that motion. *Id*. The motion was denied insofar as it pertained to "primary [and secondary] liability claims under Rule 10b-5 or §17(a)(1) for statements regarding the Fund's risks, strategy success (February 2009 to December 2009), foreclosure terminology, and use of investor funds (May 2008 to December 2009);" and insofar as it pertained to "§17(a)(2) and (3) claims for statements regarding the success of the Fund's strategy (March 2008 to January 2009) and use of investor funds (March 2008 to April 2008[.]" *See SEC v. True North*, 2012 U.S. Dist. LEXIS 161044, at *141-42.

After the ruling on the motion for summary judgment, the claims in *SEC v. True North* were tried to a jury. [Ex. 10 (Arb. 45)]. The jury returned a verdict in favor of the SEC and against Capital Solutions Fund. [Ex. 10 (Arb. 45)] Thereafter, on or about October 25, 2013, Capital Solutions Fund was adjudged to have violated Rule 10b-5, promulgated under Section 10(b) of the Exchange Act, and to have violated Section 17(a) of the Securities Act. [Ex. 10 (Arb. 45)].

The timing and subject matter of the conduct for which Capital Solutions Fund was adjudged to have violated the securities laws overlaps with the timing and subject

[6] Claimants' Response to Motion to Dismiss, 6:12-7:4; copy of decision provided to arbitrators at exhibit D to Claimants' Response to Motion to Dismiss.

matter of the Johnstons' conversion of their limited partnership interests in Hennessey Fund into Series I Preferred Notes in Capital Solutions Fund. [ASoC, 4:22-5:3, 5:24-6:8, 7:20-11:3; Ex. 5 (Arb. 32); Ex. 10 (Arb. 45)].

Daryl Calton and his firm, Calton & Associates, offered and sold all of the Investments to the Johnstons. [ASoC, 3:25-11:18; Ex. 4, (Arb. 48), 21:18-21, 26:8-14, 27:22-29:3, 28:18-21, 39:14-16, 41:3-21, 64:15-65:17, 67:9-21, 75:12-15); Ex. 5 (Arb. 16, 32, 54-55, 59-60, 69, 75-76, 83 and 85)]. Daryl Calton was the Johnstons' purchaser representative. [Ex. 11 (Arb. 17), CALTON 000752, §2.1]. Dwayne Calton approved of Calton & Associates' offerings of the Investments to its clients. [Ex. 4 (Arb. 48), 23:8-19, 114:10-11, 114:21-24); Ex. 12 (Arb. 14, 51, 58, 66, 73 and 82)].

Daryl Calton and Calton & Associates took substantial commissions in connection with their sales of the Investments to the Johnstons. [Ex. 4 (Arb. 48), 19:11-20:2, Ex. 5 (Arb. 16, 32, 54-55, 59-60, 69, 75-76, 83 and 85)]. They took a commission of 3.5% (or $7,140) on the entire $204,000 investment in Hennessey Fund. [Ex. 4 (Arb. 48), 19:11-20:2, Ex. 5 (Arb. 16 and 18)].[7] They also took a commission of 3.5% (or $9,096) on the entire $259,896 investment in Capital Solutions Fund. [Ex. 4 (Arb. 48), 19:11-20:2, Ex. 5 (Arb. 32)]. They also took commissions on all of the other Investments. [Ex. 4 (Arb. 48), 19:11-20:2; Ex. 5 (Arb. 54-55, 59-60, 69, 75-76, 83 and 85)]. In stark contrast to Daryl Calton and his firm who profited through substantial

[7] The Johnstons invested $204,000 in Hennessey Fund, in exchange for which they received a capital balance of $199,920 and incurred a sales charge of $4,080. [*Id.*].

commissions, the Johnstons lost in excess of $1,000,000 in connection with the Investments. [Ex. 13 (Arb. 96)].

**c. Claims.**

In the Arbitration, the Johnstons brought the following claims, among others: Negligence [Award, p.2; ASoC, ¶¶21-42 (13:23-15:18); §§ I.a.-b., *supra*, I.c., *infra*]; Respondeat superior [Award, p.2; ASoC, ¶¶106-110 (23:23-24:11); §§ I.a.-b., *supra*, I.c., *infra*]; Securities fraud pursuant to, *inter alia*, A.R.S. §§44-1991 and 44-2003; [Award, p.2; ASoC, ¶¶1-9 (11:14-12:19); §§ I.a.-b., *supra*, I.c., *infra*]; Control person liability pursuant to A.R.S. §44-1999(B); [Award, p.2; ASoC, ¶¶60-67 (18:15-19:12); §§ I.a.-b., *supra*, I.c., *infra*]; and Liability of the community of Daryl and Ginny Calton [ASoC, ¶¶129-132 (26:13-21); §§ I.a.-b., *supra*, I.c., *infra*]. Although the arbitrators awarded on the basis of a claim of egregious negligence, the Johnstons did not bring a claim of egregious negligence. [Award, p. 5; ASoC].

Negligence. The Johnstons alleged, *inter alia*, that Daryl Calton and Calton & Associates recommended an improper overconcentration in real estate related securities. [ASoC, 5:12-16, ¶38 (16:9-10); §§ I.a.-b., *supra*]. In this regard, Calton & Associates' own manual states, in part: "The customer's portfolio AS A WHOLE after the Investment must show no unsuitable concentrations, excessive risk, etc." [Ex. 7 (Arb. 97), CALTON 002978-79)].

As set forth in the Award, the arbitrators found that "the evidence did reflect a concentration in real estate development private offerings and there was no evidence that Daryl Ray Calton warned Claimants about this risk." [Award, p. 5]. The arbitrators also

found that Daryl Calton was negligent in "warning about concentration …." [Award, p.5]. However, "by a majority opinion, the Panel didn't think Daryl Ray Calton's negligence in warning about concentration was egregious enough to permit the complaint on his record to stand." [Award, p. 5].

Respondeat superior. The Johnstons alleged, *inter alia*, that Daryl Calton was employed by and a registered representative of Calton & Associates. [ASoC, 2:20-21, ¶¶60-67 (18:15-19:13); §§ I.a.-b., *supra*]. The Johnstons also alleged that Calton & Associates was jointly and severally liable with Daryl Calton under respondeat superior and agency law doctrines. [ASoC, ¶¶106-110 (23:23-24:11); §§ I.a.-b., *supra*]. However, it appears that the arbitrators disregarded those doctrines because they (i) disregarded the law as it pertained to Daryl Calton's liability and/or (ii) awarded on the basis of a matter not submitted to them. [Award].

Securities fraud. The Johnstons alleged, *inter alia*, that Daryl Calton, Dwayne Calton and Calton & Associates were liable because they had made, participated in, or induced the unlawful purchase or sale of the Investments. [ASoC, 2:15-17, ¶1 (11:14), ¶¶5-8 (12:4-14); §§ I.a.-b., *supra*]. However, the arbitrators did not expressly refer to the applicable statute, A.R.S. §44-2003. [Award].

Control person liability. The Johnstons alleged, *inter alia*, that Daryl Calton was employed by and a registered representative of Calton & Associates; and the Johnstons also alleged that Dwayne Calton was Daryl Calton's boss and the president of Calton & Associates. [ASoC, 2:20-21, ¶¶60-67 (18:15-19:13); §§ I.a.-b., *supra*]. However, the arbitrators did not expressly refer to the applicable statute, A.R.S. §44-1999(B). [Award].

Liability of community. The Johnstons alleged, *inter alia*, that the community of Daryl Calton and Ginny Calton was liable for Daryl Calton's statutory violations and torts. [ASoC, 2:23-3:3, ¶¶129-132 (26:13-21); §§ I.a.-b., *supra*]. However, the arbitrators disregarded the law pertaining to liability of the community. [Award].

## II. ARGUMENT.

The Court should modify or correct or, in the alternative, vacate the Award, in whole or in part, because the arbitrators (i) manifestly disregarded the law and/or (ii) awarded upon a matter not submitted to them. 9 U.S.C. §§10(a)(4) and 11(b); *see also Comedy Club, Inc., v. Improv West Associates ("Comedy Club")*, 553 F.3d 1277, 1289-94 (9thCir.2009). As set forth in *Comedy Club*, "the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, *specifically 9 U.S.C. § 10(a)(4)*, which states that the court may vacate 'where the arbitrators exceeded their powers.'" *Comedy Club*, 553 F.3d at 1290, *citing Kyocera Corp. v. Prudential-Bache T Servs. ("Kyocera")*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc).

### a. Negligence.

#### 1. The arbitrators manifestly disregarded the law.

The arbitrators found negligence on the part of Daryl Calton. Section I, *supra*. Despite the finding of negligence, the arbitrators rendered an award in favor of Defendants on the basis that Daryl Calton's negligence was not egregious. *Id*.

However, the Johnstons did not have to prove egregiousness in order to have prevailed on their negligence claim. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007) ("To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty

requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.")

By imposing an additional element of egregiousness, the arbitrators manifestly disregarded the law pertaining to the Johnstons' negligence claim. *Comedy Club*, 553 F.3d at 1290 (an arbitrator's award is in manifest disregard of the law, where, as here, it is "clear from the record that the arbitrator[] recognized the applicable law and then ignored it.") In this case, the Award itself demonstrates that the arbitrators recognized the applicable law - i.e., negligence; and then ignored it. Section I, *supra*.

Not only does the imposition of an egregiousness element constitute a manifest disregard of the law, it is fundamentally unfair to the Johnstons, who were forced to arbitrate this matter before an industry panel – and it only adds to the regrettable, and widely held, perception of investors that FINRA arbitration proceedings are biased and unfair.[8] Under the circumstances, the Court should confirm the arbitrators' finding of negligence; it should vacate the Award insofar as it pertains to egregious negligence; and it should apply the law of negligence, and hold Daryl Calton liable for negligence in accordance with the industry panel's finding. 9 U.S.C. § 10(a)(4); *Comedy Club*, 553 F.3d at 1289-94; *Gipson*, 214 Ariz. at 143; Section I, *supra*.

---

[8]*See, e.g.*, State Securities Regulators Say New Study Clearly Shows Investors View Securities Arbitration as Biased and Unfair, http://www.nasaa.org/5698/state-securities - regulators-say-new-study-clearly-shows-investors-view-arbitration-as-biased-and-unfair, *citing* Barbara Black and Jill Gross, Perceptions of Fairness of Securities Arbitration: An Empirical Study, Report to the Securities Industry Conference on Arbitration, University of Cincinnati College of Law, Public Law Research Paper No. 08-01 (Feb. 15, 2008).

**2. <u>The arbitrators awarded on a matter not submitted</u>.**

In rendering an award on the basis that Daryl Calton's negligence was not egregious, the arbitrators awarded on a matter not submitted to them – i.e., awarded upon the basis of egregious negligence as opposed to negligence. Section I, *supra*. Daryl Calton was either negligent, or he was not negligent – and the arbitrators found him to have been negligent. *Id.* As such, the Court should confirm the arbitrators' finding of negligence; it should modify or correct the Award insofar as it pertains to egregious negligence; and it should apply the law of negligence, and hold Daryl Calton liable for negligence in accordance with the panel's finding. 9 U.S.C. §11(b) (Court may make an order modifying or correcting award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."); *Gipson*, 214 Ariz. at 143; Section I, *supra*.

**3. <u>Damages</u>.**

As set forth on the Johnstons' damage study that is in evidence in the Arbitration, the Johnstons suffered damages in the amount of $1,108,499. <u>Ex. 13 (Arb. 96)</u>. The Defendants, as Respondents, did not offer a controverting damage study into evidence. Under the circumstances, the Court should hold Daryl Calton liable to the Johnstons in the amount of $1,108,499.

**b. <u>Respondeat Superior</u>.**

The arbitrators manifestly disregarded respondeat superior and agency law doctrines. Section I, *supra*. Daryl Calton was employed by and a registered

representative of Calton & Associates; Daryl Calton was negligent; and Daryl Calton's tortious conduct occurred in the course of his employment. *Id*.

It follows that Calton & Associates is jointly and severally liable for Daryl Calton's negligence. A.R.S. §12-2506(D); *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 95 (App.2007) ("Subsection 12-2506(D)(2) preserves the vicarious liability of a principal or master for the conduct of an agent or servant."); *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust, Inc.*, 197 Ariz. 535, 540 (App.2000) ("An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment.") As such, the Court should modify or correct or, in the alternative, vacate the Award insofar as it pertains to the liability of Calton & Associates for the tortious conduct of Daryl Calton. The Court should hold Calton & Associates and Daryl Calton jointly and severally liable for Daryl Calton's negligence. A.R.S. §12-2506(D); *Law*, 217 Ariz. at 95; *Baker*, 197 Ariz. at 540; Sections I and II.a., *supra*.

**c. <u>Securities Fraud</u>**.

The arbitrators manifestly disregarded an applicable Arizona statute, A.R.S. § 44-2003. The issuer's offering of the Capital Solutions Fund Investment was fraudulent. Section I, *supra*. Daryl Calton and his firm made, participated in, or induced the sale of the Capital Solutions Fund Investment to the Johnstons. *Id*. However, the arbitrators ignored A.R.S. §44-2003, or at least did not refer to that statute in their Award. *Id*.

By ignoring A.R.S. §44-2003, the arbitrators manifestly disregarded the law pertaining to the Johnstons' securities fraud claim. *Comedy Club*, 553 F.3d at 1290;

*Standard Chtd. PLC v. Price Waterhouse*, 190 Ariz. 6, 22 (App.1996) ("in extending liability to those who 'make, participate[] in or induce[]' offending transactions, the legislature chose to identify the 'dealer, salesman or agent' as examples of dealmakers, participants, or inducers who would qualify for joint and several liability under the statute. *See* A.R.S. § 44-2003. Dealers, salesmen, and agents have in common that they undertake on behalf of sellers or purchasers to promote the sale. Each has a financial incentive to accomplish the sale, and each engages in the kind of purposeful persuasive effort described above.")

As such, the Court should modify or correct or, in the alternative, vacate the Award insofar as it pertains to the Johnstons' securities fraud claim. *Comedy Club*, 553 F.3d at 1290. The Court should hold Daryl Calton and Calton & Associates jointly and severally liable to the Johnstons for having made, participated in or induced the Capital Solutions Fund Investment. A.R.S. § 44-2003; *Standard Chtd. PLC v. Price Waterhouse*, 190 Ariz. at 22; Section I, *supra*.

The Johnstons suffered damages of $300,879 in connection with the Capital Solutions Fund Investment, which offering, as discussed above, was found by a jury in federal court to have violated the anti-fraud provisions of the securities laws. Ex. 13 (Arb. 96). Accordingly, the Court should hold Daryl Calton and Calton & Associates jointly and severally liable to the Johnstons in the amount of $300,879 with respect to the Capital Solutions Fund Investment.

**d. <u>Control Person Liability</u>.**

The arbitrators manifestly disregarded Arizona's control person liability statute. A.R.S. § 44-1999(B). Daryl Calton is employed by and a registered representative of Calton & Associates. *See* Section I, *supra*. Dwayne Calton is the president of Calton & Associates. *Id*. However, the arbitrators ignored A.R.S. § 44-1999(B), or at least did not refer to that statute in their Award. *Id*.

By ignoring A.R.S. §44-1999(B), the arbitrators manifestly disregarded the law pertaining to the Johnstons' control person liability claim. *Comedy Club*, 553 F.3d at 1290. As such, the Court should modify or correct or, in the alternative, vacate the Award insofar as it pertains to the Johnstons' control person liability claim. *Id*. The Court should hold Calton & Associates and Dwayne Calton liable as control persons with respect to Daryl Calton and/or Calton & Associates having made, participated in or induced the Capital Solutions Fund Investment. A.R.S. § 44-1999(B); Sections I. and II.c., *supra*. The Court then should hold Daryl Calton, Dwayne Calton and Calton & Associates jointly and severally liable to the Johnstons in the amount of $300,879 with respect to the Capital Solutions Fund Investment. *Id*.

**e. <u>Liability of the Community</u>.**

The arbitrators manifestly disregarded the law pertaining to the liability of the community of Daryl Calton and Ginny Calton. Section I, *supra*. Daryl Calton and Ginny Calton are married. *Id*. Daryl Calton's conduct was on behalf of or for the benefit of the community. *Id*.

It follows that the community of Daryl Calton and Ginny Calton is liable for Daryl Calton's statutory liability and tortious conduct. *Hays v. Richardson*, 95 Ariz. 64, 66-67 (1963) ("if one spouse is negligent while furthering a community purpose, the community is liable for damages resulting therefrom."); *Alta. Secs. Comm'n v. Ryckman*, 200 Ariz. 540, 549 (App.2001), *citing Cadwell v. Cadwell*, 126 Ariz. 460, 463 (App.1980), (both spouses' interest in community property liable in action for domestication of foreign judgment where underlying judgment was based on statutory/regulatory violations committed by the husband in connection with his business activities, and where no evidence was presented to show that the husband was not acting for the benefit of the community when he engaged in those business activities); *Cadwell*, 126 Ariz. at 463, *citing Garrett v. Shannon*, 13 Ariz.App. 332, 333 (App.1970) ("The law is settled in Arizona that the community property of both spouses may be liable for an intentional tort committed by one of the spouses where the intent and purpose of the activity leading to the commission of the tort was to benefit the community interests[;]"), and *citing, inter alia, Hofmann Co. v. Meisner*, 17 Ariz.App. 263, 268, (1972) ("Benefit to the community need not be the primary object or intention. 'All that is required is that some benefit was intended for the community.'"); *see also Depinto v. Provident Sec. Life Ins. Co.*, 374 F.2d 50, 52-53 (9th Cir.1967), *citing Hays*, 95 Ariz. at 66-67 (community property subject to damage awards for the torts of one spouse, where the spouse is "serving a community purpose at the time of the tort.")[9]

---

[9] Briefed in Reply in Support of Claimants' Motion for Leave to Amend Statement of

As such, the Court should modify or correct or, in the alternative, vacate the Award insofar as it pertains to the liability of the community of Daryl Calton and Ginny Calton for Daryl Calton's statutory liability and tortious conduct. The Court should hold the community of Daryl Calton and Ginny Calton liable for Daryl Calton's statutory liability and tortious conduct. Sections I. and II.a.-e., *supra*.

## **RELIEF REQUESTED**

It is unnecessary for the Court to extensively review the underlying record in the industry Arbitration. The Award plainly finds Daryl Calton negligent. The evidence presented at the Arbitration demonstrates damages of $1,108,499.

Accordingly, Plaintiffs request the Court to confirm the industry panel's finding of negligence, to modify or correct the Award insofar as it pertains to egregious negligence, and to award Plaintiffs their damages of $1,108,499. In the alternative, Plaintiffs request the Court to vacate the Award, in whole or in part.

DATED this 19th day of March, 2014.

**TITUS BRUECKNER & LEVINE PLC**

BY: /s/ David A. Fitzgerald, #020446

Jon A. Titus
David A. Fitzgerald
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona 85255
jtitus@tbl-law.com
dfitzgerald@tbl-law.com
(480) 483-9600
*Attorneys for Plaintiffs*

Claim, 5:6-23. The arbitrators read the reply. [Award, p. 2-3].