WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT M. JOHNSTON, JANICE M. JOHNSTON, and ROBERT F. JOHNSTON AND JANICE M. JOHNSTON REVOCABLE TRUST,<br><br>      Plaintiffs,<br><br> vs.<br><br>CALTON & ASSOCIATES, INC., a Florida corporation; DARYL CALTON; VIRGINIA CALTON, a/k/a GINNY CALTON; and DWAYNE CALTON;<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 2:14-cv-0572-HRH<br>)<br>) |

O R D E R

Motion to Modify or Correct Arbitration Award;
Cross-Motion to Confirm Arbitration Award

  Plaintiffs move to modify or correct an arbitration award, or in the alternative, to vacate the arbitration award.[1]  Defendants oppose this motion and cross-move to confirm

---

 [1]Docket No. 1.

the arbitration award.[2] Defendants' cross-motion is opposed.[3] Oral argument was requested but is not deemed necessary.

Facts

Plaintiffs are Robert and Janice Johnston and the Robert F. and Janice M. Johnston Revocable Trust. Defendants are Calton & Associates, Inc.; Daryl Calton; Virginia Calton, a/k/a Ginny Calton; and Dwayne Calton.

Dwayne Calton is the president of Calton & Associates and Daryl Calton works as a securities broker for Calton & Associates. Plaintiffs invested in several real estate related securities which were offered and sold by Calton & Associates and for which Daryl Calton acted as their purchaser representative. Plaintiffs contend that all of these investments "were complex; all of them were speculative; and all of them failed to perform."[4] Plaintiffs contend that they "lost in excess of $1,000,000 in connection with" these investments.[5]

On March 29, 2013, plaintiffs commenced a Financial Industry Regulatory Authority (FINRA)[6] arbitration proceeding against defendants. In their Submission Agreement,

---

[2]Docket No. 8.

[3]Docket No. 10.

[4]Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.] at 4, Docket No. 1.

[5]Id. at 8.

[6]FINRA "is a self-regulatory organization" that is "responsible for regulatory
(continued...)

plaintiffs stated that they were "submit[ting] the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-laws, Rules, and Code of Arbitration Procedure."[7] Plaintiffs "agree[d] to abide by and perform any award(s) rendered pursuant to this Submission Agreement."[8]

In the FINRA arbitration, plaintiffs asserted numerous claims for relief, including Arizona securities fraud, negligence, control person liability, and respondeat superior. Plaintiffs contended that the investments they made through defendants were ultra risky and that Daryl Calton compounded the risk "by pushing the Johnstons into an improper overconcentration in the real estate financing sector."[9] Plaintiffs' negligence claim was based, in part, on their allegations of overconcentration. They alleged that the Caltons

---

[6](...continued)
oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation...." Sacks v. S.E.C., 648 F.3d 945, 948 (9th Cir. 2011) (internal citations omitted).

[7]Submission Agreement, Exhibit A, Defendants' Opposition to Plaintiff's [sic] Motion to Modify or Correct Arbitration Award [etc.], Docket No. 8.

[8]Id.

[9]Amended Statement of Claim at 5, Exhibit 2, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1. Calton & Associates' Supervisory Procedures Manual provides, in discussing the suitability of an investment, that a "customer's portfolio AS A WHOLE after the investment must show no unsuitable concentrations, excessive risk, etc." Exhibit 7 at Calton002979, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

were negligent because Daryl Calton "recommended an improper concentration of Investments in the real estate financing sector" and that "Dwayne Calton 'signed off' on the improper concentration."[10]

At the evidentiary hearing before the FINRA arbitration panel, Daryl and Dwayne Calton made a motion for expungement. "Under the Securities Exchange Act, one of FINRA's duties is to 'establish and maintain a system for collecting and retaining registration information' about registered representatives such" as the Caltons. In re Lickiss, Case No. C–11–1986 EMC, 2011 WL 2471022, at *1 (N.D. Cal. June 22, 2011) (quoting 15 U.S.C. § 78o–3(i)(1)(A)). "'Registration information' includes information about 'disciplinary actions, regulatory, judicial, and arbitration proceedings.'" Id. (quoting 15 U.S.C. § 78o–3(i)(5)). "CRD [Central Registration Depository] is the database that FINRA and the securities commissions of the 50 states developed to store, among other information, information about regulatory, enforcement and arbitration actions taken against registered representatives and other securities personnel in accordance with [the above] obligation." Id. In their motion for expungement, the Caltons moved to expunge any reference to plaintiffs' arbitration from the CRD. Expungement may be granted if 1) "the claim, allegation or information is factually impossible or clearly erroneous;" 2) "the registered person was not involved in the alleged investment-related sales practice

---

[10]Amended Statement of Claim at 16, Exhibit 2, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

violation, forgery, theft, misappropriation or conversion of funds;" or 3) "the claim, allegation or information is false."[11]

On March 6, 2014, the arbitration panel entered its award. The panel "denied in their entirety" plaintiffs' claims.[12] The panel also recommended the expungement of all references to the Johnstons' arbitration as to Dwayne Calton and the majority of the panel recommended expungement as to Daryl Calton.[13] The panel made two findings of fact as to its expungement recommendations:[14]

1) "The registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds; and"

---

[11]Notice to Arbitrators and Parties on Expanded Expungement Guidance, Exhibit D, Defendants' Opposition to Plaintiff's [sic] Motion to Modify or Correct Arbitration Award [etc.], Docket No. 8.

[12]Award at 4, ¶ 1, Exhibit 1, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1. The panel listed all of the claims plaintiffs were asserting on page two of the award. Id. at 2.

[13]Id. at 4-5 & 8.

[14]FINRA rules require that "[i]n order to grant expungement of customer dispute information under Rule 2080, the panel must ... [i]ndicate in the arbitration award which of the Rule 2080 grounds for expungement serve(s) as the basis for its expungement order and provide a brief written explanation of the reason(s) for its finding...." Rule 12805, copy attached as Exhibit A to Defendants' Reply in Support of Cross-Motion to Confirm Arbitration Award, Docket No. 11.

      2)      "The claim, allegation, or information is false."[15]

The panel explained its findings of facts and in doing so addressed the issue of concentration:

> As for concentration, the evidence did reflect a concentration in real estate development private offerings and there was no evidence that Daryl Ray Calton warned Claimants about this risk. However, the Panel didn't feel as though Claimants were babes in the woods about risks surrounding these types of investments. Claimant Janice M. Johnston seemed to be pretty savvy about bookkeeping and financial matters generally.
>
> Also, the evidence did not reflect any concerns on the part of Claimants about concentration. Was this a matter of not knowing what they didn't know? Perhaps, but the Panel felt that Claimants had at least a bit of responsibility for overseeing their investment portfolio. Given that, and by a majority opinion, the Panel didn't think Daryl Ray Calton's negligence in warning about concentration was egregious enough to permit the complaint on his record to stand.[16]

These carelessly written explanations for the Caltons' expungement motion are the basis for plaintiffs' motion which is now before the court.

      Plaintiffs move to modify or correct the arbitration award, or in the alternative, to vacate the award. Plaintiffs contend that the arbitration panel erred as to their claims for negligence, respondeat superior, securities fraud, control person liability, and liability of

---

[15]Award at 5, Exhibit 1, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

[16]Id.

the community. Defendants cross-move for an order confirming the arbitration award, and defendants request their attorney fees and costs incurred in responding to plaintiffs' motion.

## Discussion

Under the Federal Arbitration Act, the court's "review of the actual award is 'both limited and highly deferential.'" Schoenduve Corp. v. Lucent Technologies, Inc., 442 F.3d 727, 730 (9th Cir. 2006) (quoting Poweragent Inc. v. Elec. Data Sys. Corp., 358 F.3d 1187, 1193 (9th Cir. 2004)). The court must enter an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

Section 10 provides that a court may vacate an arbitration award "where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10(a)(4). "'[A]rbitrators exceed their powers ... not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.'" Schoenduve Corp., 442 F.3d at 731 (quoting Kyocera Corp. v. Prudential-Bache Trade Services, Inc., 341 F.3d 987, 997 (9th Cir. 2003)); see also, Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1290 (9th Cir. 2009) ("the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)"). "Neither erroneous

legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the" FAA. Kyocera Corp., 341 F.3d at 994.

Section 11 provides that a court may modify or correct an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). "A court may 'strike all or a portion of an award pertaining to an issue not at all subject to arbitration.'" Schoenduve Corp., 442 F.3d at 732 (quoting Kyocera Corp., 341 F.3d at 997–98.) "This limited review 'is designed to preserve due process' without 'unnecessary public intrusion into private arbitration procedures.'" Id. (quoting Kyocera Corp., 341 F.3d at 998).

Plaintiffs first argue that the arbitration award as to their negligence claim should be vacated because the arbitration panel manifestly disregarded the law of negligence. Plaintiffs contend that the panel plainly found negligence on the part of Daryl Calton but then rendered an award in defendants' favor, rather than plaintiffs', because Daryl Calton's negligence was not "egregious." Plaintiffs argue that this was a manifest disregard of the law because under Arizona law, egregiousness is not an element of a negligence claim. See Gipson v. Kasey, 150 P.3d 228, 230 (Ariz. 2007) ("To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal

connection between the defendant's conduct and the resulting injury; and (4) actual damages."). Plaintiffs insist that it is clear that the arbitration panel "'recognized the applicable law and then ignored it.'" Comedy Club, 553 F.3d at 1290 (quoting Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995)). Thus, plaintiffs ask that the court confirm the panel's finding that Daryl Calton was negligent, vacate the award as it pertains to egregious negligence, and hold Daryl Calton liable for negligence. In the alternative, plaintiffs argue that the court could modify the arbitration award because the arbitration panel awarded on a matter not submitted to them. Plaintiffs contend that they did not make a claim for egregious negligence and thus the arbitration panel should not have based its award on whether or not Daryl Calton's negligence was egregious.

Plaintiffs have misread the arbitration award. The award unambiguously states that plaintiffs' "claims are denied in their entirety" and that the panel reached this conclusion "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions[.]"[17] The reference to "negligence" on the part of Daryl Calton was not made in connection with plaintiffs' claims but rather was made in connection with the panel's explanations for their findings of fact on the Caltons' motion for expungement. The court cannot assume that the panel's reference to "negligence" in its discussion of expungement was intended to apply to plaintiffs' claims. There is nothing

---

[17] Award at 4, Exhibit 1, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

in the award that suggests that when the panel used the word "negligent" in its expungement discussion to describe Daryl Calton's conduct that it meant that it was finding Daryl Calton liable for plaintiffs' investment losses. In viewing the panel's award with the high level of deference that it must, the court cannot conclude that it was nonsensical for the panel to find, for expungement purposes, that plaintiffs' claims were "false" even though Daryl Calton may have been "negligent" because he did not warn the Johnstons about overconcentration. The court concludes the arbitration panel did not manifestly disregard the law as to negligence.[18]

The arbitration panel also did not decide a matter not submitted to it, i.e., a claim for egregious negligence. Rather, the panel decided whether plaintiffs had proven their negligence claim and concluded that they had not. And, the panel decided Daryl Calton's motion for expungement and recommended expungement because any "negligence" on his part as to overconcentration was not "egregious enough to permit [plaintiffs'] complaint on his record to stand."[19] Both of these matters were submitted to the arbitration panel.

---

[18]In their opposition to plaintiffs' motion, defendants point out that the panel found that the Johnstons were not "babes in the woods" in terms of investments. Plaintiffs interpreted this as an argument about contributory and comparative negligence. But, defendants were not making a contributory or comparative negligence argument.

[19]Award at 5, Exhibit 1, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

Plaintiffs next argue that the court should find Daryl Calton liable for $1,108,449 in damages for his negligence. This number is based on plaintiffs' "damage study" that was entered into evidence during the arbitration.[20] Plaintiffs contend that defendants offered no evidence to rebut their damage study and thus they argue that they have proven this amount of damages. But, because plaintiffs' negligence argument fails, there is no need to consider whether plaintiffs have proven their damages or not.

Plaintiffs next argue that the arbitration panel manifestly disregarded the law as to their respondeat superior claim. Plaintiffs seem to be suggesting that the arbitration panel ignored the doctrine of respondeat superior because it did not find Calton & Associates jointly and severally liable for Daryl Calton's negligence. See Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc., 5 P.3d 249, 254 (Ariz. Ct. App. 2000) ("An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment."). Similarly, plaintiffs argue that the arbitration panel disregarded Arizona law pertaining to the liability of the community of Daryl Calton and Ginny Calton because it did not find the community liable for Daryl Calton's negligence. But, because plaintiffs' negligence argument fails, so too do their respondeat superior and liability of the community arguments.

---

[20]Exhibit 13, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

Plaintiffs next argue that the arbitration panel manifestly disregarded Arizona securities law because it did not refer to A.R.S. § 44-2003 in the award. A.R.S. § 44-2003 governs joint and several liability for violations of Arizona's laws pertaining to the sale of securities. Plaintiffs contend that Daryl Calton and Calton & Associates should be held jointly and severally liable for offering the Capital Solutions Fund investment because in October 2013, Capital Solutions Fund was found by a jury to have violated federal securities law.[21] Plaintiffs contend that their damage study shows that they suffered damages of $300,879 in connection with the Capital Solutions Fund investment and thus Daryl Calton and Calton & Associates should be held jointly and severally liable for this amount. Plaintiffs also argue that the arbitration panel manifestly disregarded Arizona's control person liability statute, A.R.S. § 44-1999(B), because the panel did not refer to this statute in the award. Plaintiffs argue that Calton & Associates and Dwayne Calton should be held liable as control persons in connection with the Capital Solutions Fund investment.

"[A]rbitrators are not required to state the reasons for their decisions." A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992). "The rule that arbitrators need not state their reasons presumes the arbitrators took a permissible route to the award where one exists." Id. Thus, the court must assume that the arbitration panel

---

[21]Judgment in a Civil Case, Exhibit 10, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1.

considered whether plaintiffs had proven their claims based on the Capital Solutions Fund investment and properly found that plaintiffs had not done so.

Because plaintiffs have failed to show that the arbitration award should be vacated or modified, defendants argue that the court should confirm the award. See Schoenduve Corp., 442 F.3d at 731 (court "must affirm an order to confirm an arbitration award unless it can be vacated, modified, or corrected as prescribed by the FAA"). The court cannot confirm the award, however, because defendants have not named FINRA as an additional party or served FINRA with their cross-motion. The award expressly provides that "[u]nless specifically waived in writing by FINRA, parties seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents."[22] Defendants' motion to confirm the arbitration award is denied. Defendants may renew their motion to confirm the arbitration award if and when they receive the requested waiver from FINRA.

Defendants also request that they be awarded their fees and costs incurred in responding to plaintiffs' motion to modify, correct, or vacate the arbitration award. First, defendants request their fees and costs as a sanction under Rule 11, Federal Rules of Civil Procedure. "[A] district court may impose Rule 11 sanctions if a paper filed with the court

---

[22]Award at 5, Exhibit 1, Plaintiffs' Motion to Modify or Correct Arbitration Award [etc.], Docket No. 1. This language tracks FINRA Rule 2080(b). See Exhibit C, Defendants' Opposition to Plaintiff's [sic] Motion to Modify or Correct Arbitration Award [etc.], Docket No. 8.

is for an improper purpose, or if it is frivolous." G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003). Defendants argue that plaintiffs filed their motion for an improper purpose and that plaintiffs' motion was frivolous.

Defendants' Rule 11 request for fees is denied because defendants did not comply with Rule 11(c)(2). Rule 11(c)(2) provides that

> [a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

"'The requirements of the rule are straightforward: The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after service of the motion.'" Hohu v. Hatch, 940 F. Supp. 2d 1161, 1177 (N.D. Cal. 2013) (quoting Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389 (4th Cir. 2004)). "'It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions.'" Id. (quoting Brickwood Contractors, 369 F.3d at 389). Defendants

neither filed their motion for sanctions as a separate motion nor did they serve it on plaintiffs twenty-one days before filing it with the court.

Defendants also suggest that they are entitled to attorney fees under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Defendants' request for fees pursuant to § 1927 is denied because "§ 1927 cannot be applied to an initial pleading." In re Keegan Management Co., Securities Litigation, 78 F.3d 431, 435 (9th Cir. 1996). Defendants requested fees under § 1927 after plaintiffs filed their motion to correct or modify the arbitration award, which was the initial pleading in this case.

Defendants also contend that they are entitled to their costs and fees under A.R.S. §§ 12-341 and 12-341.01. Defendants contend that they are entitled to their attorney fees under A.R.S. § 12-341.01 because this is a case "arising out of a contract." Defendants contend that this case arises out of the customer contracts that plaintiffs entered into with Calton & Associates.

Federal law, not state law, governs the award of any costs in this case. Thompson v. StreetSmarts, Inc., Case No. CV–10–1885–PHX–LOA, 2011 WL 2600744, at *14 (D. Ariz.

-15-

June 30, 2011). And, defendants have not shown that they are entitled to fees pursuant to A.R.S. § 12-341.01. "[W]here a contract is merely somewhere within the factual background, an award of fees under § 12–341.01(A) is not proper." In re Larry's Apartment, L.L.C., 249 F.3d 832, 836 (9th Cir. 2001). Here, because plaintiffs made no breach of contract claims in this case or in the arbitration proceedings, the customer contracts were peripheral to their tort and statutory claims. This is not a case in which the tort and statutory claims could not exist but for a breach of contract and thus it is not a case "arising out of contract." See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc., 6 P.3d 315, 320-21 (Ariz. Ct. App. 2000) ("When the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract. In such cases, it cannot be said that the plaintiff's claim would not exist 'but for' the contract."). Defendants' request for fees and costs under Arizona law is denied.

## Conclusion

Plaintiffs' motion to modify or correct the arbitration award, or in the alternative, to vacate the award,[23] is denied. Defendants' request[24] for their attorneys' fees and costs incurred in responding to plaintiffs' motion is denied. Defendants' cross-motion to confirm

---

[23]Docket No. 1.

[24]Docket No. 8.

the arbitration award[25] is denied, with leave to renew. Defendants shall either file a renewed motion to confirm the arbitration award or a status report on or before August 18, 2014.

DATED at Anchorage, Alaska, this 28th day of July, 2014.

/s/ H. Russel Holland
United States District Judge

---

[25]Docket No. 8.